Your Honor, this case on the docket, 2-16-0172, people of the state of Illinois, Clinton, Appaloo, v. David Moreno-Lozano, is intended to cover. In argument on behalf of the defendant, the defendant, this is Jessica W. Arizo. In argument on behalf of the defendant, Appaloo, this is Stephen J. Rizzo. Mr. Arizo, you may proceed. You may proceed. You may please record. Jessica Arizo, Office of the State Appellate Defender, on behalf of David Moreno-Lozano. The issue in this case is whether or not the state's evidence at trial was sufficient to prove the defendant guilty, beyond a reasonable doubt, of possession with intent to deliver. Specifically, whether or not the defendant had constructive possession of the narcotics found in the hotel room in which he was in, behind a vent in the wall secured by security. Now, in order to prove that the defendant had constructive possession, the state needed to show both that the defendant had knowledge that the drugs were there, as well as that he had immediate exclusive control of the area. Who rented the room? Initially, the defendant rented the room, and a second person, the co-defendant, was added three days later. And he paid cash? He paid cash, correct. In terms of the immediate exclusive control of the area, the cases that predominantly that the state cites involve someone's home, with the exception of the Warren case. This was not his home. This was a hotel room that he was in for five days before the arrest. There was no evidence that any of the clothes or other items in the room belonged to him. We have evidence, as you stated, that the room was in his name, and he paid for it. He also made a statement, which distinguishes Wolski. Wolski is one of your primary cases that you rely on, correct? Yes. But Wolski, would you agree, is much different? Well, Wolski is difficult in that it doesn't have a lot of details about the circumstances of… Well, it has the fact that it involves possession of less than 30 grams of cannabis, correct? Right. That it was the home that he lived in, in the basement apartment with his brother. Right. He was not in the home for at least three days before the police raided the home with a search warrant, correct? Yes. And in that case, the defendant, Mr. Wolski, testified in his own defense and said he had not been in the apartment for three days and that a lot of people come and go from the apartment, correct? Right. So that's quite a bit different than the facts of this case, aren't they? Well, it's different in those facts, but it still stands for the proposition that there has to be some sort of corroborating evidence that the defendant was… Unfortunately for you, your position is that in Wolski, the Supreme Court relied upon a 1959 Illinois Supreme Court case which followed the old standard that in a circumstantial case, the reviewing court had to resolve all facts and circumstances on the theory of innocence rather than guilt, if that can be reasonably done. That's no longer the law, is it? No. Now it's a common standard. But that aside, I think that it's still good law that there needs to be more. And you know that there needs to be more. There needs to be knowledge. It's not enough that he was renting this room. There needs to be knowledge that he knew that there were drugs behind that vent. Well, he said, the drugs are my own deals. There's three, I guess, three components that the State argues that show knowledge, the first being the statement. The statement, so Investigator Pihon testified that, I asked whose drugs or money is that, and he says, it's not mine, it's my meals. That doesn't mean that he knew they were there before they were found. We had testimony that the co-defendant was looking upset and red-faced and nervous. Maybe he assumed, well, they're not mine, they must be his. We have five or six words that he said, and trying to infer from that that that meant that he already knew they were there, I don't think that that statement is enough to say that he knew the drugs were there. As in that, you're asking us to look at that and re-weigh it and look at the other possible inference. No, what we're saying is that the evidence of knowledge that goes to show knowledge is not strong enough to overcome reasonable doubt. The statement, he didn't speak English well. We know that as well. So we don't know if he didn't understand the questions. It's so much going to rely so much on this short little statement that doesn't say, they're his, I saw him put them there. They're his, I knew he had drugs. All he said was, they're not mine, they're his. The state also argues that when the police entered, he threw his phone. That's correct. And they also argue that he fled his jurisdiction. Right. So I'll address both of those. So the phone, the testimony was that the officers came into the written room, the defendant threw the phone across the room, it hit the wall, it went under the bed. The actual court was not quite as detailed as that, except when the police came in, he threw the phone under the bed. In either case, though, the phone had nothing tying it to narcotics trade. The fact that consciousness of guilt shown by trying to conceal evidence or suspicious behavior around something that shows evidence of a crime, it's just a phone. We don't know anything about this phone other than it was his phone and he threw it. That's not evidence that he knew there were drugs behind the wall. Well, do we know anything about the phone? Like maybe it might be worth more than $100? I don't know anything about the phone. Isn't it the act of throwing rather than what he threw the indicia of guilt or knowledge, especially when it's time with the giving of consent to search the surrounding area? Well, I think that they argued both. They argued that there was something he was hiding. I mean, it could have just been a reaction to someone coming in, but their argument that he did this to hide something and there's just no evidence to support that, that he was hiding something on his phone. He just threw the phone. And then regarding the flight, we don't know where he was. He was not present at trial and the jury was instructed. Can we go back? Sure. I'm trying to conceptualize. Is the argument that he was trying to destroy the phone because there was evidence on the phone that was incriminating or was the presentation or the argument that throwing the phone was an indicator of frustration or fear of being caught? You know, I believe that the way they presented it was that he was trying to hide the phone. He was trying to get the phone away from him. But that, I mean. What was the street value of the cocaine? I believe $2.4 million. And he rented the room, had access to the room with Kate Crook. Yes. But so did Mr. Castro. And there's evidence the defendant was not in the room at all times. We don't know what happened when Mr. Castro was there by himself. And if I could get back to the flight. Like I said, we don't know why the defendant was not at trial. And while that could be considered as consciousness of guilt, it's not enough to show that at the time the narcotics were inside the hotel, that he had knowledge they were there. And that even adding all of these factors up, it's not enough to show that he had knowledge that the narcotics were there. In the realm of reasonable reality, would the staff in the hotel place the goods in the vent? No, that's not likely. I'm trying to eliminate the rest of the world. Insofar as who might have a rational thought that this is a good hiding place. I understand this court can mostly look at the evidence and say it's probably either the defendant or it's Mr. Castro. Or somebody who supposedly was the prior predecessor who rented the room or possibly someone before that. It's possible, right. Let me ask you this. I'm sure you're familiar with drug trafficking and what goes on in drug trafficking. There are people called mules. And mules travel from one location to another location with large quantities of drugs. And the defendant rented the room. And then presumably by inference, looking at this case as a juror, the mule was Castro. Castro brought the kilos to the room for distribution. And they got upset by police finding out what was going on. And that could very well be true. And joint possession. You can have both defendants that are equally responsible for those drugs. The defendant says, they're my amigos. You can have joint possession, but you still have to show knowledge on both parties. You still have to show that he knew Castro was a drug mule and brought these kilos in and hid them in the room. And the evidence just does not show that. Your contention is that that statement has no guilty inferences that flow from it? No. I mean, it has some probative value, but it's just not enough in itself or even with these other factors to say, well, yeah, that shows he had knowledge. If he had said, I knew the drugs were there ahead of time. If he had, if there was some evidence of, I don't know, like fingerprints connecting him to the drugs, there's nothing connecting him to the actual drugs. There were no fingerprints, no DNA. We don't even have photos of the outside of the vents to know whether or not it was something you could, you know, would someone be, you know, reasonable to think there's something hidden in there. Yeah, I mean, it took the police, you know, they were there 15, 20 minutes before they decided to check in there. So presumably it wasn't an obvious thing on the other side of this back. So you have, you know, the evidence has to show that he knew it was there. Were there any other questions? Okay. Do my amigos narrow the usual suspects to persons not previously in possession or renting that room and that it's either him or Castro or both that are in possession? Yeah, I mean, like I said previously, it's the most likely scenario is that it is one of the two. Whether that statement indicates that more so that it's Castro, I mean, I don't know because I don't think, like, as I said, the statement says I know it's his. It's just presuming by his actions, by his response, that it is his. If there are no other questions, we would just ask that you reverse the defendant's conviction. Thank you. Thank you. Mr. Lupa. Good morning, Your Honors, and may it please the Court, Counsel. My name is Steven Lupa, and I'm an assistant state's attorney in DuPage County, and I'm here today on behalf of the people of the state of Illinois. When a defendant challenges the sufficiency of the evidence that was used to convict him at trial, the only question for the reviewing court is whether any rational trial of fact could have found the elements of the offense beyond a reasonable doubt. In making this determination, the reviewing court must look at all of the evidence in the light most favorable to the prosecution, and it must draw all reasonable inferences in the prosecution's favor. On that point, I noticed that in your brief you did not address Wolski. Why not? Correct, Judge. We thought that Wolski spoke for itself in that it's really not applicable to the facts of this case. Justice Burkett, as you pointed out, it's an entirely different circumstance of where this defendant was sharing this basement apartment with his brother. He had not been in the apartment for several days prior. Aren't those things that you should have pointed out in the brief just opposed to waiting for an open argument to respond to the defendant's arguments? Judge, perhaps we should have cited that case in our brief. However, we believe that the cases cited in our brief overcame any kind of inference of the defendant not being guilty based on that case. So, Your Honors, with the applicable standards in mind, it is clear that we have met our burden without a reasonable doubt. And as defense counsel points out, the issue in this case is possession. Did the state prove that the defendant constructively possessed the cocaine that was in the hotel room vent? And there are two elements to that, as we've discussed. There has to be knowledge of the presence of contraband, and there has to be immediate and exclusive control over the area where the contraband was found. Something that was not argued in the briefs, but this case was tried to a double jury, correct? Correct, Your Honor. No defendants at counsel took it? Correct. Doesn't that create a problem? The inference being that these two people were working together, they fled together. It's almost like offering evidence of a joint venture by the fact that neither one of them are there. Well, Justice Burkett, that certainly goes to consciousness of guilt, the fact that the defendant fled from prosecution, did not appear for his trial. Who made the decision to try these cases together? Are you talking about the judge or the state attorney's office? I assume there was a motion to join the cases, correct? I believe that's correct, Your Honor, but I can't say. They were all seen together? Yes. So starting with the last element of constructive possession, we have to show immediate and exclusive control over the area where the contraband was found. And I think the blue case, which we cited in our brief, states an important proposition. And it states, habitation in or rental of the premises where the narcotics are discovered is sufficient evidence of control to constitute constructive possession. That is sufficient by itself if we show that the defendant rented the premises where the contraband was found. And here the evidence does show that the defendant rented that premises. On the 7th, he checks into the hotel room. He uses his own name. The hotel employee came in and testified that it's his name who appears on the ledger. Certainly another individual checks in on the 9th. Paid cash. Paid cash, correct. And the evidence is that our defendant paid cash. Every single night up until the 12th. But for the intervention of the Cook County investigators, who knows how long this would have continued, paying in cash each and every night. So I don't think there's any reasonable dispute here that the defendant rented the premises where the drugs were found. And that by itself is enough to show immediate and exclusive control of where the contraband was found. And I think Warren speaks to that as well. The 4th District case out of Champaign. In that case, the defendant, his name appeared on the ledger. He was paying for the room on a day-by-day basis. And the appellate court found those facts important in finding probable cause. It's the very first thing they mentioned when they turned to the synthesis of the facts of the case with the law. And they found those facts important. That's exactly what we have here. It makes no difference that there was another occupant in the room. In Warren, that occupant had more access to the defendant. They referred to it as unfettered access. But even so, based on the defendant and how he paid for the room, how he checked out the room, that was sufficient to show that he maintained control over that room. Ms. Arazo does point out, and I think one of your others pointed out as well, how about the possibility of a previous occupant leaving the drugs behind? Certainly, that's a possibility. But by asking, by making that argument, what's being asked is that this court reweigh the evidence. And I think Cunningham speaks to that point as well. Cunningham states that the sufficiency of proof of the accused's control of the place where the narcotics are found is not eroded because the place previously had been under the control of another who could have placed the narcotics there. The jury was entitled to make that inference. They were entitled to decide, well, we think it was this guy. It wasn't the guy who- That theory would be promised on that room being available to whoever stashed the drugs there to making that room available at some later time, right? Correct, correct. Which makes it even more illogical that someone would do that. Correct. And there was no evidence of that, not to shift the burden or anything like that, but there's no evidence of that. The jury was certainly reasonably entitled to infer that. Now, going to the other element, the knowledge of the presence of contraband. Knowledge can be inferred through control of the premises. That's what Nettles says. But here, we don't have to rely just on that bare influence of control. We have the defendant's own words. As your Honors have noted, the defendant says, it's not mine. It's my amigo's. Now, if the defendant didn't know it was there, he had no idea the first time he'd ever seen it in his life, he could have stopped right there and just said, it's not mine. It's not mine. I have no idea where that came from. But no, he continued on. He continued that statement, and he said he knows exactly who it belongs to. He says, it's my amigo's. So I think his words are important there, and I think the circumstances of that statement are also important. He doesn't make this statement in the hotel room when he's there with the investigators. He does not make that statement until he's separated from his co-defendant in the squad car. He waits until he's separated from his co-defendant to throw his co-defendant under the bus. That's when he tells them, oh, hey, it's this guy's. But again, the statement is important, but that's not all we have. We don't only have to rely on that as well. We also have substantial evidence of consciousness of guilt in this case. We have the evidence that the defendant threw his phone across the room. One of the investigators testified it actually struck the wall before it landed underneath the opposite bed. And there are a number of inferences that can be drawn from that, a number of guilty inferences. Was there a search of the phone? Was there data in the phone? No, Your Honor, at least not. According to the record, there's no evidence of any sort of search or anything like that. But as Justice McLaren pointed out, it's not necessarily what was on the phone that gives rise to the inference of guilt. It's the act of throwing the phone. That is not something that reasonable people would do. When anybody, much less a police officer, enters the room, just immediately throwing the phone. A reasonable person, innocent of any wrongdoing. Correct. Exactly, Your Honor. And that, again, goes to the defendant's guilty conscience, to his guilty state of mind. There was no drug paraphernalia in the room, correct? Correct, Your Honor. No prints on the packaging? Correct. At least it was never examined for prints or anything like that. And, you know, Ms. Araiza does raise that point, well, there were no fingerprints. There's certainly more evidence that could have been presented, which we would have relied on, you know, to get to that guilty verdict. And the State would acknowledge, certainly, the presence of fingerprints would make our case stronger, but that's not the standard. The standard is not whether there's evidence that could make the case stronger. It's whether any rational fact could have found it, any rational jury could have found the elements beyond a reasonable doubt. And I think another thing, I think another fact that goes towards his knowledge, towards his guilty conscience, is the fact that he delayed telling the officers that he did not speak English until after his arrest, until after he knew he was in trouble. And I think the timing there is more than a little suspicious. While the investigators are in the room, he never tells the investigators that he doesn't understand. He responds coherently and appropriately to all the questions they ask. And we don't dispute that this defendant speaks Spanish. I don't think there's any question. We would agree the defendant speaks Spanish. We would even concede that Spanish is probably his first language. But just because the defendant prefers Spanish doesn't mean he doesn't understand English. There are people who speak multiple languages or even understand another language. So just by the fact that maybe he preferred Spanish and he wanted someone to, you know, be with him at the desk, that doesn't mean he doesn't understand English. We presented sufficient evidence that he understood English, and that was for the jury to decide. So his response to that question was appropriate. And then the final piece of the puzzle of the evidence of conscientious of guilt is, as we discussed, the defendant's failure to appear for trial. McDonald holds that evidence of flight is admissible to show consciousness of guilt. So, Your Honors, unless there are any further questions, the people would respectfully ask you to affirm the judgment of the circuit court. Thank you for your time. Thank you. There's a reason. The first thing I'd like to address, Warren, just because I did not discuss that in my opening argument. In that case, the facts in that case are very different than this case. In that case, the female occupant, her name was not on the hotel ledger. There was ample evidence in that case that the defendant had knowledge that the woman, Ms. Rosas, was a longtime drug addict. He was aware that she used the hotel room to bring men back in order to obtain money from them to supplement and to aid her in getting more drugs. So that case, while it's similar in that they're both hotels, I mean, the facts are just very different than this case. In terms of knowledge, regarding the issue that it was shown a consciousness of guilt that the defendant didn't say he didn't speak English until later. I don't believe that was in the brief, but I don't see how that's consciousness of guilt. Up until the point that they found the drugs, he wasn't in fear for his liberty. When the drugs were found and he realized what was going on, obviously if he needs an attorney, he needs somebody, people to know that he doesn't understand English. And he needed a translator to check into a hotel. I mean, that's not a complicated procedure. You give your ID and your credit card. If he needed a translator for that procedure, I mean, that shows that his English was just not good. He couldn't have a basic transaction without the woman translating for him. These are all factors, though, that presumably the jury considered, right? Yes, the jury heard this evidence, correct. It's just that they should have reached a different conclusion. The jury did not act rationally and determinedly to show that he had knowledge of the narcotics. Are there any other questions? Thank you. Thank you. We will take the case under advisement. There will be another short recess.